No. 21-16278

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

CALIFORNIA RESTAURANT ASSOCIATION,

Plaintiff-Appellant,

v.

CITY OF BERKELEY,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the Northern District of California

———————————

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
## IN SUPPORT OF PETITION FOR REHEARING

———————————

*Of Counsel:*

SAMUEL T. WALSH
  *General Counsel*

BRENT ALLEN
  *Deputy General Counsel for
    Environment and Litigation*

ALEXANDRA KLASS
  *Deputy General Counsel for
    Energy Efficiency and Clean
    Energy Demonstrations*

*U.S. Department of Energy*

BRIAN M. BOYNTON
  *Principal Deputy Assistant
    Attorney General*

ISMAIL J. RAMSEY
  *United States Attorney*

MICHAEL S. RAAB
THOMAS PULHAM
JOSEPH F. BUSA
  *Attorneys, Appellate Staff,
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................1

STATEMENT OF THE CASE ................................................................3

    A.    The Energy Policy and Conservation Act (EPCA)..................3

    B.    Prior Proceedings ....................................................................4

REASONS FOR GRANTING THE PETITION FOR REHEARING .......6

    A.    EPCA Preempts State and Local Energy Conservation
            Standards and Their Equivalents, Not Health and
            Safety Regulations. .................................................................6

    B.    The Panel's Contrary Opinion Threatens to Preempt
            Broad Swaths of State and Local Law and Disrupt
            Federal Administration of EPCA.........................................16

CONCLUSION .....................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                             **Page(s)**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation &
  Dev. Comm'n,*
  410 F.3d 492 (9th Cir. 2005) .................................................................8

*Building Indus. Ass'n of Wash. v. Washington State Bldg. Code Council,*
  683 F.3d 1144 (9th Cir. 2012) ..............................................................8

*Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund,*
  138 S. Ct. 1061 (2018) .........................................................................12

*Dolan v. U.S. Postal Serv.,*
  546 U.S. 481 (2006) ..............................................................................13

*Dubin v. United States,*
  599 U.S. __, 2023 WL 3872518 (2023) .................................................14

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470 (1996) ..............................................................................18

*National Credit Union Admin. v. First Nat'l Bank & Tr. Co.,*
  522 U.S. 479 (1998) .........................................................................15-16

*New York State Conference of Blue Cross & Blue Shield Plans v.
  Travelers Ins. Co.,*
  514 U.S. 645 (1995) .......................................................................16, 17

*Sturgeon v. Frost,*
  577 U.S. 424 (2016) ................................................................................6

*Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate
  of Keffeler,*
  537 U.S. 371 (2003) ..............................................................................15

*Wyeth v. Levine,*
   555 U.S. 555 (2009) ............................................................ 20

*Yates v. United States,*
   574 U.S. 528 (2015) ..................................................... 8, 11

**Statutes:**

29 U.S.C. § 1144(a) ....................................................... 17

42 U.S.C. § 6291(4) .............................................. 3, 5, 12

42 U.S.C. § 6291(4)-(6) ............................................... 12

42 U.S.C. § 6291(5) ....................................................... 3

42 U.S.C. § 6291(6) .................................................... 3, 7

42 U.S.C. § 6292(b)(1)(A)-(B) ............................... 21-22

42 U.S.C. § 6293(b)(3) .................................................. 12

42 U.S.C. § 6295 ...................................................... 7, 12

42 U.S.C. § 6297(c) .................................. 3, 4, 6, 7, 8, 9

42 U.S.C. § 6297(c)(2) ................................................... 4

42 U.S.C. § 6297(d)(1) ................................................... 4

42 U.S.C. § 6297(d)(1)(A) ............................................ 15

42 U.S.C. § 6297(d)(1)(B) ...................................... 10, 21

42 U.S.C. § 6297(d)(1)(C) ............................................ 10

42 U.S.C. § 6297(d)(2) .................................................. 20

42 U.S.C. § 6297(d)(6)......................................................................14

**Rule:**

Fed. R. App. P. 35(a)(2) ..............................................................2

**Other Authority:**

47 Fed. Reg. 57,198 (Dec. 22, 1982) ..................................16, 18

# INTRODUCTION AND SUMMARY

The Energy Policy and Conservation Act authorizes the federal government to establish "energy conservation standards" for certain consumer products and industrial equipment. Those standards prescribe the energy efficiency, energy use, or water use of a covered product in standardized laboratory conditions. Once the federal government promulgates such a standard for a product, the provision of the Act at issue here then preempts State and local requirements concerning the elements of the federal energy conservation standard: the energy efficiency, energy use, and water use of such product. The Act thus prevents States and localities from attempting to do at their level what the Department of Energy does at the federal level. That conclusion accords with the statute's text, context, and structure. It leaves intact traditional State and local regulation of health, safety, and drought response. And it is the long-settled understanding of the federal government, the States, municipalities, and this Court—until now.

The panel opinion in this case upended those settled expectations. It held that a particular municipal ordinance addressing a health and

safety concern identified by local elected leaders is preempted by the Act—even though the ordinance does not regulate the energy efficiency, energy use, or water use of a covered product. The ordinance prohibits the installation of certain energy infrastructure in new construction. It thereby affects, indirectly, the circumstances in which some products may be used in some locations. The panel did not explain why this ordinance's indirect effects warranted preemption or why other health and safety ordinances would not. It thereby cast a cloud of uncertainty over *any* health or safety law that may indirectly affect someone's ability to use a product for which the federal government has issued an energy conservation standard. The panel opinion fails to address several features of the statute, identified in the federal government's panel amicus brief, that counsel in favor of a narrower interpretation. And it threatens to disrupt the orderly administration of the statute by putting undue pressure on a statutory waiver provision that is ill-suited to reviewing local regulations not aimed at energy conservation. Rehearing is warranted to correct the panel's error regarding these issues of exceptional importance. Fed. R. App. P. 35(a)(2).

## STATEMENT OF THE CASE

### A.    The Energy Policy and Conservation Act (EPCA)

EPCA establishes a comprehensive federal regime regulating energy and water conservation standards for a variety of covered products, often appliances. The statute defines a federal "energy conservation standard" as, in relevant part, "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use, or … water use" for a covered product. 42 U.S.C. § 6291(6). "Energy efficiency" means "the ratio of the useful output of services from a consumer product to the energy use of such product." *Id.* § 6291(5). And "energy use" means "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures." *Id.* § 6291(4).

This case is about the scope of one of EPCA's express preemption provisions, which displaces certain State or local regulations where a federal energy conservation standard exists for a covered product. As its title states, the provision sets out a "[g]eneral rule of preemption for energy conservation standards." 42 U.S.C. § 6297(c). It provides that no State or local "regulation concerning the energy efficiency, energy use,

3

or water use of such covered product shall be effective with respect to such product unless the regulation" falls into one of several categories not relevant here. *Id.*

The Department of Energy may waive the preemptive effect of the statute under certain conditions. 42 U.S.C. § 6297(c)(2). Any State or local government with a regulation that "provides for any energy conservation standard or other requirement with respect to energy use, energy efficiency, or water use" for a covered product for which there is a federal energy conservation standard "may file a petition with the Secretary requesting a rule that such State regulation become effective with respect to such covered product." *Id.* § 6297(d)(1).

## B.    Prior Proceedings

In 2019, the City of Berkeley, California, adopted an ordinance prohibiting, with certain exceptions, "[n]atural [g]as [i]nfrastructure" (essentially pipes to carry natural gas) in newly constructed buildings. ER-147-48 (Berkeley Municipal Code §§ 12.80.040.A, 12.80.080). A restaurant industry association claims, as relevant here, that EPCA preempts the ordinance. ER-103. The district court dismissed the complaint. Concluding that EPCA preempts only energy conservation

standards for covered products, or their equivalents, the court noted that the pipes at issue in the ordinance are not covered products and the ordinance "does not address" either energy efficiency or energy usage of any covered products. ER-19. "Instead, the [o]rdinance focuses on regulating the underlying natural gas infrastructure" and has only a "downstream" and "indirect" effect on any covered product's actual energy usage in certain locations. ER-21, 22 & n.6.

A panel of this Court reversed and remanded. The panel focused its analysis narrowly on the phrase "concerning … energy use" in EPCA's preemption provision. The panel partially quoted EPCA's definition of "energy use" as "the quantity of energy directly consumed by a consumer product *at point of use*," 42 U.S.C. § 6291(4) (emphasis added), and concluded that "EPCA is concerned with the end-user's ability to *use* installed covered products at their intended final destinations," Slip Op. 13. The panel further reasoned that the word "concerning" "erase[d] any doubt" that EPCA preempted regulations that only indirectly affect how a consumer may use a covered product. Slip Op. 15-16. The panel reasoned that "a regulation may 'concern' something without directly regulating that thing." Slip Op. 16. And "a

regulation that bans the delivery of natural gas to products that operate on natural gas 'concerns' the energy use of those products" and is thus preempted. *Id.*

**REASONS FOR GRANTING THE PETITION FOR REHEARING**

> **A.  EPCA Preempts State and Local Energy Conservation Standards and Their Equivalents, Not Health and Safety Regulations.**

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation marks omitted). Here, the text, context, and structure of EPCA and its express preemption clause, 42 U.S.C. § 6297(c), demonstrate that EPCA expressly preempts only State and local regulations that prescribe the equivalent of an energy conservation standard for a covered product.

**1.** By its plain terms, the preemption provision at issue here is triggered only when a federal "energy conservation standard" comes into effect "for any covered product." 42 U.S.C. § 6297(c). An "energy conservation standard" is defined, in relevant part, as "a performance standard which prescribes a minimum level of *energy efficiency* or a

maximum quantity of *energy use*, or … *water use*, for a covered product, determined in accordance with test procedures." *Id.* § 6291(6) (emphases added). Once the federal government issues a standard for a covered product prescribing that product's performance in one of those categories—energy efficiency, energy use, or water use—EPCA provides that "no State regulation concerning the *energy efficiency*, *energy use*, or *water use* of such covered product shall be effective with respect to such product." *Id.* § 6297(c) (emphases added).

EPCA's preemption provision thus works hand-in-glove with the scope of authority that EPCA grants the federal government to issue energy conservation standards for covered products. EPCA uses the same elements—the "energy efficiency," "energy use," and "water use" of a "covered product"—to define *both* the federal energy conservation standards that the Department issues for covered products *and* to define the scope of State and local law that is preempted by the issuance of federal energy conservation standards for covered products. 42 U.S.C. §§ 6291(6), 6295, 6297(c). EPCA thus prevents States and localities from attempting to do at their level what the Department of Energy does at the federal level.

That is the conclusion that two panels of this Court correctly reached in prior cases examining related aspects of EPCA's preemption provision: "Federal regulations promulgated under EPCA provide minimum standards for the energy efficiency of such fixtures, and the federal statute preempts state attempts to impose minimum standards greater than the federal law." *Building Indus. Ass'n of Wash. v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1148 (9th Cir. 2012) (citation omitted); *see also Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500 (9th Cir. 2005) (EPCA "preempt[s] state energy efficiency standards.").

That conclusion is reinforced by the title of the preemption provision. There, Congress explained that the provision sets out a "[g]eneral rule of preemption *for energy conservation standards* when [a] Federal standard becomes effective for [a] product." 42 U.S.C. § 6297(c) (emphasis added). Such headings, while "not commanding" on their own, "supply cues" regarding a statute's reach. *Yates v. United States*, 574 U.S. 528, 540 (2015). And here, the title cues the reader to draw an equivalence between the federal energy conservation standards

issued under the Act and the State and local laws preempted by the Act upon issuance of a federal standard.

That equivalence is further reinforced by language in the preemption clause specifying that both the federal standards and the preempted State and local standards are product focused. Upon the issuance of a federal standard "for any covered product," the statute preempts certain State and local standards concerning the energy efficiency or energy or water use "of such covered product" and provides that those State and local standards shall not be effective "with respect to such product." 42 U.S.C. § 6297(c). The statute thus presupposes that the kinds of standards that may be preempted are those that are drawn with respect to "such" covered product—as will be the case when a State or local government issues its own energy conservation standard prescribing the energy efficiency, energy use, or water use of a covered product. The product-focused language of the preemption clause would exclude from preemption, by contrast, a State or local health or safety standard that does not regulate any covered product. It is unclear, for example, how something like the ordinance at issue here could be preempted "with respect" to covered products but *not* with respect to

other products not covered by EPCA energy conservations standards. *Contra* Slip Op. 18-19. The same pipes going from the meter into the building would serve both types of products.

EPCA's waiver provision points to the same conclusion. The statute allows the Department of Energy to waive preemption if, among other things, the Department finds that the State regulation that would otherwise be preempted is "needed to meet unusual and compelling State or local energy or water interests," such as when the "energy or water savings resulting from the State regulation" outweigh its overall costs, broadly conceived. 42 U.S.C. § 6297(d)(1)(B), (C). Congress thus tailored the waiver standard to match the kind of regulations that are preempted by EPCA. State energy or water conservation standards, or their equivalents, may help meet local conservation needs and thus qualify for waiver in appropriate circumstances. State regulations aimed at health and safety goals (such as fire safety or the avoidance of pollution), by contrast, do not neatly fit with the prescribed waiver standard. Health and safety regulations might not produce any energy or water savings at all, as that is not their goal. It is thus highly implausible that Congress intended to preempt both State energy

conservation standards *and* (implicitly) health and safety laws but created a pathway for waiver that appears to speak directly to *only* the former.

**2.** The panel erred in holding that EPCA not only preempts State and local energy conservation standards but also reaches, seemingly, a broad swath of health and safety regulations that may *indirectly* affect the circumstances in which a covered product may be used but do not prescribe a product's energy efficiency, energy use, or water use. "If Congress indeed meant to make § [6297(c)] an all-encompassing ban" on such traditional areas of State and local regulation, "one would have expected a clearer indication of that intent." *Yates*, 574 U.S. at 540. Yet EPCA contains no features that would support assigning to Congress the implausible intent to accord such broad preemptive effect to the much narrower issuance of a federal energy conservation standard for a covered product.

The panel chiefly construed the statutory definition of "energy use" to protect "the end-user's ability to *use* installed covered products at their intended final destinations." Slip Op. 13. There is no provision in EPCA that addresses whether and to what extent a covered product

subject to a federal energy conservation standard must be able to be used by a consumer in various circumstances. If Congress had wanted to include a guarantee-of-use clause in the preemption provision, it could have sought to do so in a straightforward manner. But "Congress does not hide elephants in mouseholes." *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1071-72 (2018) (quotation marks omitted). And EPCA's inclusion of "use" and "point of use" in its definition of "energy use" does not transform that definition, or the substantive provisions that draw on it, into guarantee-of-use clauses.

The statute defines "energy use" and "energy efficiency" (as well as "water use") in order to give meaning to the "energy conservation standards" that the Act empowers the Department to issue. 42 U.S.C. §§ 6291(4)-(6), 6295. "Energy use" is defined as the quantity of energy consumed at the appliance's point of use as determined "in accordance with test procedures" measuring an appliance's typical energy use over "a representative average use cycle or period of use." *Id.* §§ 6291(4), 6293(b)(3). The statute thus defines a covered product's "energy use" under *standardized testing conditions*. It does not guarantee that

consumers will be able to actually use a covered product in any circumstance they may wish.

The panel also erred in concluding that Congress "expand[ed] preemption beyond direct or facial regulations of covered appliances" by preempting State and local regulations "concerning"—as opposed to "of"—the energy efficiency, energy use, and water use of covered products. Slip Op. 16. While the word "concerning," read in a vacuum, could mean "relating to" in some variable degree, the Supreme Court has cautioned that determining whether or not "[a] word in a statute … extends[] to the outer limits of its definitional possibilities … depends upon reading the whole statutory text, considering the purpose and context of the statute." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). The panel did not identify any basis for choosing a broad over a narrow meaning of "concerning" here. As explained above, the rest of the statutory text, context, and structure indicates that the relevant provisions of EPCA are product focused. They authorize the promulgation of federal energy conservation standards of covered products and preempt similar State and local regulation of such products. A narrower, product-focused definition is thus appropriate.

*Dubin v. United States*, 599 U.S. __, 2023 WL 3872518, at *7 (2023) (interpreting "elastic" statutory phrase, "in relation to," narrowly in light of "the title Congress chose").

Indeed, Congress made crystal clear in another portion of the same section of EPCA that, by referring to a regulation "concerning" a product, Congress meant a regulation "of" that product. In that provision, Congress explained what happens when federal preemption of a State regulation has previously been waived "and subsequently a Federal energy conservation standard *concerning* such product is amended." 42 U.S.C. § 6297(d)(6) (emphasis added). As with many of the textual arguments set out above, the panel did not address that argument or explain why the same word—"concerning"—should be interpreted in two different ways within the same section of the same statute.

EPCA's waiver provision underscores the narrow meaning of "concerning" in the preemption clause. The waiver provision allows the Department to waive the preemption of a State or local regulation that "provides for any energy conservation standard or *other* requirement *with respect to* energy use, energy efficiency, or water use for any …

covered product." 42 U.S.C. § 6297(d)(1)(A) (emphases added). Under familiar interpretive principles, "general words"—such as, here, "other requirement with respect to energy use, energy efficiency, or water use"—"are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003) (quotation marks omitted).

Applying that principle here, the kind of requirement discussed in the waiver clause that is drawn "with respect to" the elements of an energy conservation standard is best interpreted in a manner similar to the product-focused "energy conservation standard" that immediately precedes it. Contrary to the panel opinion, this interpretation does not "create redundancy in the statutory text." Slip Op. 20. It captures both "energy conservation standards," styled as such, and requirements targeting the same elements as energy conservation standards (that is, the energy efficiency, energy use, or water use of covered products), regardless of how they may be styled. And, because "similar language contained within the same section of a statute must be accorded a consistent meaning," *National Credit Union Admin. v. First Nat'l Bank*

*& Tr. Co.*, 522 U.S. 479, 501 (1998), the same construction should also apply to the similar language in the preemption provision discussing regulations "concerning" the elements of an energy conservation standard. The panel did not address this argument, either.

The panel's discussion of building codes (Slip Op. 16-17, 18 n.5) also misses the mark. State and local building codes fall within the scope of the preemption clause if they establish energy conservation standards or similar requirements, such as a regulation prohibiting "hook-ups for appliances with less than a certain efficiency." 47 Fed. Reg. 57,198, 57,215 (Dec. 22, 1982). But a regulation that does not do so is not preempted simply because it could be characterized as a building code.

**B.    The Panel's Contrary Opinion Threatens to Preempt Broad Swaths of State and Local Law and Disrupt Federal Administration of EPCA.**

**1.** Rehearing is warranted to correct these significant errors. The panel's analysis is inconsistent with *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995). There, the Supreme Court interpreted a provision of the Employee Retirement Income Security Act (ERISA) that preempts any

16

State law that "relate[s] to" an employee benefit plan regulated under ERISA. *Id.* at 651 (quoting 29 U.S.C. § 1144(a)). The Court concluded that the ERISA preemption provision leaves States free to adopt "[q]uality standards" and "basic regulation of employment conditions [that] invariably affect the cost and price of services" obtained by covered plans. *Id.* at 660. The Court explained that, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course." *Id.* at 655.

The panel opinion in this case stretches the indeterminacy of the word "concerning" in the same manner the Supreme Court warned against in *Travelers* with respect to the phrase "relat[ing] to." It thereby threatens a broad swath of State and local health and safety protections by making EPCA preemption turn on unpredictable judicial intuitions about which laws indirectly, but sufficiently, affect consumers' use of a covered product in a manner that warrants preemption. If *any* indirect impact were sufficient, States would be disabled from regulating to protect traditional State concerns in areas well within their well-established authority.

A local regulation prohibiting the installation of an oversized furnace in a too-small space indirectly affects a consumer's ability to use that product in certain circumstances. Local safety regulations concerning propane tanks or electric space heaters may have similar consequences. There should be no doubt, however, that such regulations are not preempted by EPCA. And, for a long time, there *was* no doubt on that score, *see* 47 Fed. Reg. at 57,215 (oversized furnace regulation not preempted)—until the panel opinion in this case. Here, local elected leaders determined that an ordinance was "reasonably necessary" to address the "health and safety" of residents "suffer[ing] from asthma and other health conditions associated with poor indoor and outdoor air quality." ER-146 (Berkeley Municipal Code § 12.80.010.C). Such "health and safety" issues are "primarily, and historically, matters of local concern." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (cleaned up). The panel held that EPCA preempts the ordinance because of its indirect effects on the use of covered products. The panel did not expressly identify a limiting principle or articulate what amount or type of indirect effect would be too much. By failing to articulate a dividing line between indirect regulations that are preempted and indirect

regulations that are not, the panel opinion left under a cloud of uncertainty *any* State or local health and safety regulation that has an indirect effect of any sort on the circumstances in which a covered product may be used. *See* Slip Op. 22.

That is not a cloud that States, municipalities, or the federal government should have to live under. Nothing in EPCA, properly understood, disables a State or locality from exercising its police power to prohibit the use of items that, in its judgment, are dangerous or unsafe. Regardless of whether any particular health or safety concerns are best addressed by any particular regulation, the key point here is that the nation benefits from States and localities experimenting with different approaches to matters within their historical police powers. And the preemption provision in a federal statute about energy conservation standards for covered products does not stand in the way of different localities deciding for themselves whether and how to tackle any number of health and safety concerns identified by local leaders in ways that may have an indirect effect on a consumer's ability to use a covered product in certain circumstances. *See, e.g.*, U.S. Panel Amicus Br. 24 (discussing longstanding local health-and-safety regulation of

nitrogen oxide emissions from gas-fired water heaters). The federal government has a significant interest in ensuring that this federal statute does not needlessly displace State and local law that is outside the scope of the express preemption provision.

**2.** The panel opinion also threatens the Department's orderly administration of EPCA. *Cf. Wyeth v. Levine*, 555 U.S. 555, 576 (2009) ("[W]e have attended to an agency's explanation of how state law affects the regulatory scheme."). Absent rehearing, the panel's overbroad interpretation of the preemption provision is likely to put enormous strain on the waiver process. If any regulation, including a health and safety regulation, that has an indirect effect on the energy use of a covered product in a certain location is potentially subject to preemption, the Department is likely to be inundated with requests for waivers. It will have to decide those requests using notice-and-comment rulemaking within a six-month (or, in some circumstances, one-year) period after receiving a petition. 42 U.S.C. § 6297(d)(2). A flood of waiver requests would greatly burden Department resources.

That strain will be compounded by the difficulty of applying the statutory waiver considerations outside the context of energy

conservation standards. The Department may waive preemption, for example, if "the State … has established by a preponderance of the evidence that such State regulation is needed to meet unusual and compelling State or local energy or water interests." 42 U.S.C. § 6297(d)(1)(B). It is not clear how the Department should evaluate a regulation aimed at objectives other than energy conservation, such as fire prevention, the avoidance of environmental harms, or other risks to human health and safety. In processing a flood of waiver requests, the Department would be drawn into needless disputes with States and localities. And, all the while, the harms targeted by those regulations could continue unchecked, as EPCA does not generally empower the federal government to itself address health and safety matters that, under the panel opinion, States and localities are preempted by EPCA from addressing.

Finally, the panel opinion upends the process by which the Department has established energy conservation standards for new products. The Department's coverage determinations have been based on considerations of the purposes of EPCA and technical considerations relating to the energy consumption of the product at issue. 42 U.S.C.

§ 6292(b)(1)(A)-(B). Until now, the Department has promulgated energy conservations standards for numerous covered products without fear that, by doing so, the Department would thereby also be preempting vast swaths of State and local health and safety laws. If the panel's erroneous opinion stands, the Department's decisions going forward could quickly be overtaken by debates over interference with State and local policy in areas other than energy conservation (and possibly outside the Department's expertise).

This Court should grant rehearing to correct a panel opinion that destabilizes the long-settled understanding shared by the Department, the States, municipalities, and the courts over the allocation of regulatory authority in this area; threatens to preempt broad swaths of State and local health and safety law; and throws a wrench into the federal government's administration of the Act.

## CONCLUSION

For the foregoing reasons, the petition for rehearing should be granted and the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

SAMUEL T. WALSH
*General Counsel*

BRENT ALLEN
*Deputy General Counsel for
Environment and Litigation*

ALEXANDRA KLASS
*Deputy General Counsel for
Energy Efficiency and Clean
Energy Demonstrations*

*U.S. Department of Energy*

June 2023

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

ISMAIL J. RAMSEY
*United States Attorney*

MICHAEL S. RAAB
THOMAS PULHAM
*s/ Joseph F. Busa*
JOSEPH F. BUSA
*Attorneys, Appellate Staff, Civil
Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 305-1754
Joseph.F.Busa@usdoj.gov*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Ninth Circuit Rule 29-2(c)(2) because it contains 4,199 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Joseph F. Busa*
Joseph F. Busa
Counsel for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2023, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court

of Appeals for the Ninth Circuit by using the appellate CM/ECF system.


*s/ Joseph F. Busa*
Joseph F. Busa
Counsel for the United States

**ADDENDUM**

# TABLE OF CONTENTS

42 U.S.C. § 6291 (excerpts) .................................................... A1

42 U.S.C. § 6293 (excerpts) .................................................... A2

42 U.S.C. § 6295 (excerpts) .................................................... A3

42 U.S.C. § 6297 .................................................... A4

**42 U.S.C. § 6291 (excerpts)**

**§ 6291. Definitions**

For purposes of this part:

   (1) The term "consumer product" means any article (other than an automobile, as defined in section 32901(a)(3) of Title 49) of a type—

      (A) which in operation consumes, or is designed to consume, energy or, with respect to showerheads, faucets, water closets, and urinals, water; and

      (B) which, to any significant extent, is distributed in commerce for personal use or consumption by individuals;

      without regard to whether such article of such type is in fact distributed in commerce for personal use or consumption by an individual, except that such term includes fluorescent lamp ballasts, general service fluorescent lamps, incandescent reflector lamps, showerheads, faucets, water closets, and urinals distributed in commerce for personal or commercial use or consumption.

   (2) The term "covered product" means a consumer product of a type specified in section 6292 of this title.

   (3) The term "energy" means electricity, or fossil fuels. The Secretary may, by rule, include other fuels within the meaning of the term "energy" if he determines that such inclusion is necessary or appropriate to carry out the purposes of this chapter.

   (4) The term "energy use" means the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title.

   (5) The term "energy efficiency" means the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with test procedures under section 6293 of this title.

   (6) The term "energy conservation standard" means—

      (A) a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use, or, in the

case of showerheads, faucets, water closets, and urinals, water use, for a covered product, determined in accordance with test procedures prescribed under section 6293 of this title; or

(B) a design requirement for the products specified in paragraphs (6), (7), (8), (10), (15), (16), (17), and (20) of section 6292(a) of this title; and

includes any other requirements which the Secretary may prescribe under section 6295(r) of this title.

...

## 42 U.S.C. § 6293 (excerpts)

## § 6293. Test procedures

. . .

(b) Amended and new procedures

(1) Test procedures.—

. . .

(B) The Secretary may, in accordance with the requirements of this subsection, prescribe test procedures for any consumer product classified as a covered product under section 6292(b) of this title.

. . .

. . .

(3) Any test procedures prescribed or amended under this section shall be reasonably designed to produce test results which measure energy efficiency, energy use, water use (in the case of showerheads, faucets, water closets and urinals), or estimated annual operating cost of a covered product during a representative average use cycle or period of use, as determined by the Secretary, and shall not be unduly burdensome to conduct.

. . .

. . .

**42 U.S.C. § 6295 (excerpts)**

**§ 6295. Energy conservation standards**

(a) Purposes. The purposes of this section are to—

    (1) provide Federal energy conservation standards applicable to covered products; and

    (2) authorize the Secretary to prescribe amended or new energy conservation standards for each type (or class) of covered product.

…

(*l*) Standards for other covered products

    (1) The Secretary may prescribe an energy conservation standard for any type (or class) of covered products of a type specified in paragraph (20) of section 6292(a) of this title if the requirements of subsections (o) and (p) are met and the Secretary determines that—

        (A) the average per household energy use within the United States by products of such type (or class) exceeded 150 kilowatt-hours (or its Btu equivalent) for any 12-month period ending before such determination;

        (B) the aggregate household energy use within the United States by products of such type (or class) exceeded 4,200,000,000 kilowatt-hours (or its Btu equivalent) for any such 12-month period;

        (C) substantial improvement in the energy efficiency of products of such type (or class) is technologically feasible; and

        (D) the application of a labeling rule under section 6294 of this title to such type (or class) is not likely to be sufficient to induce manufacturers to produce, and consumers and other persons to purchase, covered products of such type (or class) which achieve the maximum energy efficiency which is technologically feasible and economically justified.

    …

…

(r) Inclusion in standards of test procedures and other requirements

Any new or amended energy conservation standard prescribed under this section shall include, where applicable, test procedures prescribed in accordance with section 6293 of this title and may include any requirement which the Secretary determines is necessary to assure that each covered product to which such standard applies meets the required minimum level of energy efficiency or maximum quantity of energy use specified in such standard.

…

## 42 U.S.C. § 6297

### § 6297. Effect on other law

(a) Preemption of testing and labeling requirements

(1) Effective on March 17, 1987, this part supersedes any State regulation insofar as such State regulation provides at any time for the disclosure of information with respect to any measure of energy consumption or water use of any covered product if—

(A) such State regulation requires testing or the use of any measure of energy consumption, water use, or energy descriptor in any manner other than that provided under section 6293 of this title; or

(B) such State regulation requires disclosure of information with respect to the energy use, energy efficiency, or water use of any covered product other than information required under section 6294 of this title.

(2) For purposes of this section, the following definitions apply:

(A) The term "State regulation" means a law, regulation, or other requirement of a State or its political subdivisions. With respect to showerheads, faucets, water closets, and urinals, such term shall also mean a law, regulation, or other requirement of a river basin commission that has jurisdiction within a State.

(B) The term "river basin commission" means—

(i) a commission established by interstate compact to apportion, store, regulate, or otherwise manage or coordinate the management of the waters of a river basin; and

(ii) a commission established under section 1962b(a) of this title.

(b) General rule of preemption for energy conservation standards before Federal standard becomes effective for product.

Effective on March 17, 1987, and ending on the effective date of an energy conservation standard established under section 6295 of this title for any covered product, no State regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered product shall be effective with respect to such covered product, unless the State regulation or revision—

(1)(A) was prescribed or enacted before January 8, 1987, and is applicable to products before January 3, 1988, or in the case of any portion of any regulation which establishes requirements for fluorescent lamp ballasts, was prescribed or enacted before June 28, 1988, or in the case of any portion of any regulation which establishes requirements for fluorescent or incandescent lamps, flow rate requirements for showerheads or faucets, or water use requirements for water closets or urinals, was prescribed or enacted before October 24, 1992; or

(B) in the case of any portion of any regulation that establishes requirements for general service incandescent lamps, intermediate base incandescent lamps, or candelabra base lamps, was enacted or adopted by the State of California or Nevada before December 4, 2007, except that—

(i) the regulation adopted by the California Energy Commission with an effective date of January 1, 2008, shall only be effective until the effective date of the Federal standard for the applicable lamp category under subparagraphs (A), (B), and (C) of section 6295(i)(1) of this title; and

(ii) the States of California and Nevada may, at any time, modify or adopt a State standard for general service lamps to conform with Federal standards with effective dates no earlier than 12 months prior to the Federal effective dates prescribed under

subparagraphs (A), (B), and (C) of section 6295(i)(1) of this title, at which time any prior regulations adopted by the State of California or Nevada shall no longer be effective.

(iii) Repealed. Pub.L. 112-210, § 10(a)(9)(C), Dec. 18, 2012, 126 Stat. 1525

(2) is a State procurement regulation described in subsection (e);

(3) is a regulation described in subsection (f)(1) or is prescribed or enacted in a building code for new construction described in subsection (f)(2);

(4) is a regulation prohibiting the use in pool heaters of a constant burning pilot, or is a regulation (or portion thereof) regulating fluorescent lamp ballasts other than those to which paragraph (5) of section 6295(g) of this title is applicable, or is a regulation (or portion thereof) regulating fluorescent or incandescent lamps other than those to which section 6295(i) of this title is applicable, or is a regulation (or portion thereof) regulating showerheads or faucets other than those to which section 6295(j) of this title is applicable or regulating lavatory faucets (other than metering faucets) for installation in public places, or is a regulation (or portion thereof) regulating water closets or urinals other than those to which section 6295(k) of this title is applicable;

(5) is a regulation described in subsection (d)(5)(B) for which a waiver has been granted under subsection (d);

(6) is a regulation effective on or after January 1, 1992, concerning the energy efficiency or energy use of television sets; or

(7) is a regulation (or portion thereof) concerning the water efficiency or water use of low consumption flushometer valve water closets.

(c) General rule of preemption for energy conservation standards when Federal standard becomes effective for product.

Except as provided in section 6295(b)(3)(A)(ii) of this title, subparagraphs (B) and (C) of section 6295(j)(3) of this title, and subparagraphs (B) and (C) of section 6295(k)(3) of this title and effective on the effective date of an energy conservation standard established in or prescribed under section 6295 of this title for any covered product, no

State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless the regulation—

(1) is a regulation described in paragraph (2) or (4) of subsection (b), except that a State regulation (or portion thereof) regulating fluorescent lamp ballasts other than those to which paragraph (5) of section 6295(g) of this title is applicable shall be effective only until the effective date of a standard that is prescribed by the Secretary under paragraph (7) of such section and is applicable to such ballasts, except that a State regulation (or portion thereof) regulating fluorescent or incandescent lamps other than those for which section 6295(i) of this title is applicable shall be effective only until the effective date of a standard that is prescribed by the Secretary and is applicable to such lamps;

(2) is a regulation which has been granted a waiver under subsection (d);

(3) is in a building code for new construction described in subsection (f)(3);

(4) is a regulation concerning the water use of lavatory faucets adopted by the State of New York or the State of Georgia before October 24, 1992;

(5) is a regulation concerning the water use of lavatory or kitchen faucets adopted by the State of Rhode Island prior to October 24, 1992;

(6) is a regulation (or portion thereof) concerning the water efficiency or water use of gravity tank-type low consumption water closets for installation in public places, except that such a regulation shall be effective only until January 1, 1997; or

(7)(A) is a regulation concerning standards for commercial prerinse spray valves adopted by the California Energy Commission before January 1, 2005; or

(B) is an amendment to a regulation described in subparagraph (A) that was developed to align California regulations with changes in American Society for Testing and Materials Standard F2324;

(8)(A) is a regulation concerning standards for pedestrian modules adopted by the California Energy Commission before January 1, 2005; or

(B) is an amendment to a regulation described in subparagraph (A) that was developed to align California regulations to changes in the Institute for Transportation Engineers standards, entitled "Performance Specification: Pedestrian Traffic Control Signal Indications"; and

(9) is a regulation concerning metal halide lamp fixtures adopted by the California Energy Commission on or before January 1, 2011, except that—

(A) if the Secretary fails to issue a final rule within 180 days after the deadlines for rulemakings in section 6295(hh) of this title, notwithstanding any other provision of this section, preemption shall not apply to a regulation concerning metal halide lamp fixtures adopted by the California Energy Commission—

(i) on or before July 1, 2015, if the Secretary fails to meet the deadline specified in section 6295(hh)(2) of this title; or

(ii) on or before July 1, 2022, if the Secretary fails to meet the deadline specified in section 6295(hh)(3) of this title.

(d) Waiver of Federal preemption

(1)(A) Any State or river basin commission with a State regulation which provides for any energy conservation standard or other requirement with respect to energy use, energy efficiency, or water use for any type (or class) of covered product for which there is a Federal energy conservation standard under section 6295 of this title may file a petition with the Secretary requesting a rule that such State regulation become effective with respect to such covered product.

(B) Subject to paragraphs (2) through (5), the Secretary shall, within the period described in paragraph (2) and after consideration of the petition and the comments of interested persons, prescribe such rule if the Secretary finds (and publishes such finding) that the State or river basin commission has established by a preponderance of the

evidence that such State regulation is needed to meet unusual and compelling State or local energy or water interests.

(C) For purposes of this subsection, the term "unusual and compelling State or local energy or water interests" means interests which—

(i) are substantially different in nature or magnitude than those prevailing in the United States generally; and

(ii) are such that the costs, benefits, burdens, and reliability of energy or water savings resulting from the State regulation make such regulation preferable or necessary when measured against the costs, benefits, burdens, and reliability of alternative approaches to energy or water savings or production, including reliance on reasonably predictable market-induced improvements in efficiency of all products subject to the State regulation.

The factors described in clause (ii) shall be evaluated within the context of the State's energy plan and forecast, and, with respect to a State regulation for which a petition has been submitted to the Secretary which provides for any energy conservation standard or requirement with respect to water use of a covered product, within the context of the water supply and groundwater management plan, water quality program, and comprehensive plan (if any) of the State or river basin commission for improving, developing, or conserving a waterway affected by water supply development.

(2) The Secretary shall give notice of any petition filed under paragraph (1)(A) and afford interested persons a reasonable opportunity to make written comments, including rebuttal comments, thereon. The Secretary shall, within the 6-month period beginning on the date on which any such petition is filed, deny such petition or prescribe the requested rule, except that the Secretary may publish a notice in the Federal Register extending such period to a date certain but no longer than one year after the date on which the petition was filed. Such notice shall include the reasons for delay. In the case of any denial of a petition under this subsection, the Secretary shall publish in the Federal Register notice of, and the reasons for, such denial.

(3) The Secretary may not prescribe a rule under this subsection if the Secretary finds (and publishes such finding) that interested persons have established, by a preponderance of the evidence, that such State regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis. In determining whether to make such finding, the Secretary shall evaluate all relevant factors, including—

(A) the extent to which the State regulation will increase manufacturing or distribution costs of manufacturers, distributors, and others;

(B) the extent to which the State regulation will disadvantage smaller manufacturers, distributors, or dealers or lessen competition in the sale of the covered product in the State;

(C) the extent to which the State regulation would cause a burden to manufacturers to redesign and produce the covered product type (or class), taking into consideration the extent to which the regulation would result in a reduction—

(i) in the current models, or in the projected availability of models, that could be shipped on the effective date of the regulation to the State and within the United States; or

(ii) in the current or projected sales volume of the covered product type (or class) in the State and the United States; and

(D) the extent to which the State regulation is likely to contribute significantly to a proliferation of State appliance efficiency requirements and the cumulative impact such requirements would have.

(4) The Secretary may not prescribe a rule under this subsection if the Secretary finds (and publishes such finding) that interested persons have established, by a preponderance of the evidence, that the State regulation is likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the State at the time of the Secretary's finding, except that the failure of some classes (or types) to meet this criterion shall not

affect the Secretary's determination of whether to prescribe a rule for other classes (or types).

(5) No final rule prescribed by the Secretary under this subsection may—

(A) permit any State regulation to become effective with respect to any covered product manufactured within three years after such rule is published in the Federal Register or within five years if the Secretary finds that such additional time is necessary due to the substantial burdens of retooling, redesign, or distribution needed to comply with the State regulation; or

(B) become effective with respect to a covered product manufactured before the earliest possible effective date specified in section 6295 of this title for the initial amendment of the energy conservation standard established in such section for the covered product; except that such rule may become effective before such date if the Secretary finds (and publishes such finding) that, in addition to the other requirements of this subsection the State has established, by a preponderance of the evidence, that—

(i) there exists within the State an energy emergency condition or, if the State regulation provides for an energy conservation standard or other requirement with respect to the water use of a covered product for which there is a Federal energy conservation standard under subsection (j) or (k) of section 6295 of this title, a water emergency condition, which—

(I) imperils the health, safety, and welfare of its residents because of the inability of the State or utilities within the State to provide adequate quantities of gas or electric energy or, in the case of a water emergency condition, water or wastewater treatment, to its residents at less than prohibitive costs; and

(II) cannot be substantially alleviated by the importation of energy or, in the case of a water emergency condition, by the importation of water, or by the use of interconnection agreements; and

(ii) the State regulation is necessary to alleviate substantially such condition.

(6) In any case in which a State is issued a rule under paragraph (1) with respect to a covered product and subsequently a Federal energy conservation standard concerning such product is amended pursuant to section 6295 of this title, any person subject to such State regulation may file a petition with the Secretary requesting the Secretary to withdraw the rule issued under paragraph (1) with respect to such product in such State. The Secretary shall consider such petition in accordance with the requirements of paragraphs (1), (3), and (4), except that the burden shall be on the petitioner to show by a preponderance of the evidence that the rule received by the State under paragraph (1) should be withdrawn as a result of the amendment to the Federal standard. If the Secretary determines that the petitioner has shown that the rule issued by the State should be so withdrawn, the Secretary shall withdraw it.

(e) Exception for certain State procurement standards

Any State regulation which sets forth procurement standards for a State (or political subdivision thereof) shall not be superseded by the provisions of this part if such standards are more stringent than the corresponding Federal energy conservation standards.

(f) Exception for certain building code requirements

(1) A regulation or other requirement enacted or prescribed before January 8, 1987, that is contained in a State or local building code for new construction concerning the energy efficiency or energy use of a covered product is not superseded by this part until the effective date of the energy conservation standard established in or prescribed under section 6295 of this title for such covered product.

(2) A regulation or other requirement, or revision thereof, enacted or prescribed on or after January 8, 1987, that is contained in a State or local building code for new construction concerning the energy efficiency or energy use of a covered product is not superseded by this part until the effective date of the energy conservation standard established in or prescribed under section 6295 of this title for such covered product if the code does not require that the energy efficiency of such covered product exceed—

(A) the applicable minimum efficiency requirement in a national voluntary consensus standard; or

(B) the minimum energy efficiency level in a regulation or other requirement of the State meeting the requirements of subsection (b)(1) or (b)(5),

whichever is higher.

(3) Effective on the effective date of an energy conservation standard for a covered product established in or prescribed under section 6295 of this title, a regulation or other requirement contained in a State or local building code for new construction concerning the energy efficiency or energy use of such covered product is not superseded by this part if the code complies with all of the following requirements:

(A) The code permits a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective.

(B) The code does not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title, except that the required efficiency may exceed such standard up to the level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d).

(C) The credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such energy conservation standard established in or prescribed under section 6295 of this title or the efficiency level required in a State regulation referred to in subparagraph (B) is on a one-for-one equivalent energy use or equivalent cost basis.

(D) If the code uses one or more baseline building designs against which all submitted building designs are to be evaluated and such baseline building designs contain a covered product subject to an energy conservation standard established in or prescribed under section 6295 of this title, the baseline building designs are based on the efficiency level for such covered product which meets but

does not exceed such standard or the efficiency level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d).

(E) If the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds either standard or level referred to in subparagraph (D), there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard.

(F) The energy consumption or conservation objective is specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost).

(G) The estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is determined using the applicable test procedures prescribed under section 6293 of this title, except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under section 6293 of this title or other technically accurate documented procedure.

(4)(A) Subject to subparagraph (B), a State or local government is not required to submit a petition to the Secretary in order to enforce or apply its building code or to establish that the code meets the conditions set forth in this subsection.

(B) If a building code requires the installation of covered products with efficiencies exceeding both the applicable Federal standard established in or prescribed under section 6295 of this title and the applicable standard of such State, if any, that has been granted a waiver under subsection (d), such requirement of the building code

A14

shall not be applicable unless the Secretary has granted a waiver for such requirement under subsection (d).

(g) No warranty

Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded under conditions of actual use.