**No. 21-16278**
Opinion filed April 17, 2023
Before: O'SCANNLAIN, Senior Circuit Judge, BUMATAY, Circuit Judge,
and BAKER, Judge, U.S. Court of International Trade

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CALIFORNIA RESTAURANT ASSOCIATION,
*Plaintiff-Appellant,*

v.

CITY OF BERKELEY,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California
No. 4:19-cv-07668-YGR
Hon. Yvonne Gonzalez Rogers, District Judge

---

## PLAINTIFF-APPELLANT CALIFORNIA RESTAURANT ASSOCIATION'S OPPOSITION TO PETITION FOR REHEARING EN BANC

---

Gary J. Toman
WEINBERG WHEELER
HUDGINS GUNN & DIAL
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA 30326
(404) 876-2700
gtoman@wwhgd.com

Kylie Chiseul Kim
MASSEY & GAIL LLP
Suite #450
Washington, DC 20024
(202) 407-1268
kkim@masseygail.com

Courtland L. Reichman
Laura Carwile
Brian C. Baran
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401
creichman@reichmanjorgensen.com

Sarah O. Jorgensen
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
(404) 609-1040
sjorgensen@reichmanjorgensen.com

*Attorneys for Plaintiff-Appellant*
*California Restaurant Association*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

ARGUMENT .........................................................................................4

I.  The Panel Reached the Correct Result by Faithfully Applying
Supreme Court and Ninth Circuit Precedent.....................................4

A. The panel correctly held that the ordinance is preempted. ............5

B. Berkeley's and amici's arguments fail to give meaning to
EPCA's text and structure and attack a strawman decision the
panel did not make...........................................................................7

II. This Straightforward Statutory Interpretation Case Does Not
Present Any Question Warranting En Banc Review. ........................16

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Air Conditioning & Refrigeration Inst. v. Energy Res.
Conservation & Dev. Comm'n,*
410 F.3d 492 (9th Cir. 2005) ...................................................... 2, 3, 11

*BFP v. Resolution Trust Corp.,*
511 U.S. 531 (1994) ........................................................................ 15

*Bond v. United States,*
572 U.S. 844 (2014) ........................................................................ 15

*Building Industry Ass'n of Washington v. Washington State
Building Code Council,*
683 F.3d 1144 (9th Cir. 2012) ................................................ 9, 10, 11, 13

*Coventry Health Care of Mo., Inc. v. Nevils,*
137 S. Ct. 1190 (2017) ................................................................ 5, 6, 18

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
541 U.S. 246 (2004) .......................................................................... 7

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) ........................................................................ 14

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,*
554 U.S. 33 (2008) ............................................................................ 9

*Gonzales v. Oregon,*
546 U.S. 243 (2006) ........................................................................ 15

*Jones v. Google LLC,*
73 F.4th 636 (9th Cir. 2023) ............................................................ 15

*Lamar, Archer & Cofrin, LLP v. Appling,*
138 S. Ct. 1752 (2018) ................................................................ 5, 6, 18

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) ........................................................................ 18

*Nat'l R.R. Passenger Corp. v. Su,*
41 F.4th 1147 (9th Cir. 2022) .......................................................... 12

ii

*Obduskey v. McCarthy & Holthus LLP,*
139 S. Ct. 1029 (2019) ..................................................... 7

*Pa. Dep't of Corr. v. Yeskey,*
524 U.S. 206 (1998) ........................................................ 9

*Puerto Rico v. Franklin Cal. Tax-Free Tr.,*
136 S. Ct. 1938 (2016) ...................................... 4, 5, 15, 18

*R.J. Reynolds Tobacco Co. v. County of Los Angeles,*
29 F.4th 542 (9th Cir. 2022) ............................. 4, 5, 15, 18

*Rowe v. N.H. Motor Transp. Ass'n,*
552 U.S. 364 (2008) ...................................................... 11, 18

*Sackett v. EPA,*
143 S. Ct. 1322 (2023) .................................................. 14, 15

*Sturgeon v. Frost,*
136 S. Ct. 1061 (2016) ..................................................... 5

*United States v. Sineneng–Smith,*
140 S. Ct. 1575 (2020) ................................................... 18

*Van Buren v. United States,*
141 S. Ct. 1648 (2021) ...................................................... 8

*Ysleta Del Sur Pueblo v. Texas,*
142 S. Ct. 1929 (2022) ...................................................... 8

## Statutes

42 U.S.C. § 6291(3) ............................................................. 5

42 U.S.C. § 6291(4) ......................................................... 5, 13

42 U.S.C. § 6291(4)-(6) ...................................................... 8

42 U.S.C. § 6293(b)(3) ...................................................... 13

42 U.S.C. § 6295 ................................................................ 3

42 U.S.C. § 6295(o)(4) ...................................................... 13

42 U.S.C. § 6297(a)(2) (1982) ......................................... 8

42 U.S.C. § 6297(b)(6)-(7) ...................................................... 14

42 U.S.C. § 6297(c) .......................................................... *passim*

42 U.S.C. § 6297(c)(4)-(9) ...................................................... 14

42 U.S.C. § 6297(d)(1)(A) ................................................... 8, 12

42 U.S.C. § 6297(d)(3) ....................................................... 6, 12

42 U.S.C. § 6297(d)(4) ............................................ 3, 7, 12, 13

42 U.S.C. § 6297(d)(6) .......................................................... 14

42 U.S.C. § 6297(f) ................................................................. 6

42 U.S.C. § 6297(f)(1)-(3) ..................................................... 14

42 U.S.C. § 6297(f)(3) ............................................................ 9

42 U.S.C. § 6297(f)(3)(A)-(B), (F) ........................................ 9

42 U.S.C. § 6297(f)(3)(C) ..................................................... 13

## Ordinances

Berkeley, Cal., Mun. Code § 12.80.030(E) ................................ 3

Berkeley, Cal., Mun. Code § 12.80.040(A) ............................... 3

## Rules

Fed. R. App. P. 35(a)(2) ....................................................... 16

Fed. R. App. P. 35(b)(1)(B) .................................................. 16

## Other Authorities

Energy Conservation Program for Consumer Products,
    47 Fed. Reg. 14,424 (Apr. 2, 1982) (proposed rule) ..................... 13, 14

S. Rep. No. 100-6 (1987) ....................................................... 3

# INTRODUCTION

This mine-run federal preemption decision does not warrant en banc review. Applying the ordinary tools of statutory interpretation and adhering to both Supreme Court and Ninth Circuit precedent, a unanimous panel held that the City of Berkeley's ban on connecting gas appliances to the existing energy supply was a preempted "regulation concerning" those appliances' "energy use." 42 U.S.C. § 6297(c). That conclusion follows from the federal Energy Policy and Conservation Act's text, structure, and purpose. The panel's straightforward application of EPCA to a specific regulation that lies within the heart of the preempted territory does not warrant en banc review.

Berkeley's petition seeks review of a decision the panel did not make. Its merits and significance arguments alike depend on the premise that the panel granted an individual right to use any federally regulated appliance free of all state and local regulations, no matter their content, purpose, or effect. That premise is false: The panel did not (and did not need to) create such a blanket immunity to reject Berkeley's crabbed view of EPCA's preemptive scope. Rather, the panel correctly held that when Berkeley challenged the limits of federal energy policy by banning natural gas in new buildings, Berkeley strayed into territory from which Congress expressly excluded it. That conclusion does not threaten the wide range of state and local regulations that affect

appliances' energy use tangentially, if at all, and have long coexisted with EPCA.  Berkeley's petition should be denied.

## BACKGROUND

**1.** Responding to the early 1970s oil crisis, Congress enacted EPCA in 1975 to create a "comprehensive energy policy" addressing "the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 498 (9th Cir. 2005).  To improve energy security, EPCA both encouraged domestic supply and promoted energy conservation.  One component of Congress's national policy is EPCA's regulation of many appliances' energy efficiency and energy use.

EPCA's appliance provisions originally focused on labeling, on the theory that well-informed consumers would choose more efficient appliances.  *Air Conditioning*, 410 F.3d at 498-99.  But over time, Congress shifted toward mandating federal standards while limiting state and local governments' role.  *Id.* at 499.  In 1978, Congress amended EPCA to require the Department of Energy to prescribe federal standards, while also strengthening preemption.  *Id.*  The Department refused, instead "initiat[ing] a general policy of granting petitions from States requesting waivers from preemption."  *Id.* (attribution omitted).

So Congress amended EPCA again in 1987, prescribing standards for many appliances and adding the preemption provision at issue here.

*Air Conditioning*, 410 F.3d at 499-500.  The Department's abdication of its standard-setting responsibility and its freewheeling waiver policy had created "a growing patchwork of differing State regulations which would increasingly complicate [appliance manufacturers'] design, production and marketing plans."  S. Rep. No. 100-6, at 4 (1987).  Congress therefore bolstered preemption and restricted waivers, including by disallowing waivers "likely to result in the unavailability in the State of a product type or of products of a particular performance class."  *Id.* at 2; 42 U.S.C. § 6297(d)(4).[1]  The preemption provision now reads:

> [E]ffective on the effective date of an energy conservation standard established in or prescribed under [§ 6295] for any covered product, **no State regulation concerning the energy efficiency, energy use**, or water use **of such covered product** shall be effective with respect to such product . . . .

§ 6297(c) (emphasis added).

**2.**  Dissatisfied with the pace and energy-neutral approach of federal policy, Berkeley decided to chart its own course.  Berkeley adopted an ordinance prohibiting natural gas infrastructure—defined as the fuel gas piping beyond "the point of delivery at the gas meter"—in new buildings.  Berkeley, Cal., Mun. Code §§ 12.80.030(E), -.040(A).  As the panel recognized, "[i]nstead of directly banning appliances in new buildings, Berkeley took a more circuitous route to the same result," banning the piping needed to make those appliances work.  Op. 7.

---

[1] Unless otherwise noted, all statutory references are to 42 U.S.C.

The California Restaurant Association sued, alleging that Berkeley's ordinance is preempted by EPCA and violates California law.

The district court dismissed the EPCA claim, ruling that Berkeley's ordinance is not preempted because it "does not *directly regulate* either the energy use or energy efficiency of covered appliances." ER-19 (emphasis added); ER-19, -21 (does not "facially" regulate appliances).

A unanimous panel reversed. The panel held that "[b]y its plain text and structure, EPCA's preemption provision encompasses building codes that regulate natural gas *use* by covered products. And by preventing such appliances from *using* natural gas, the new Berkeley building code does exactly that." Op. 7. Judge O'Scannlain concurred, arguing that "further guidance" is needed on whether to apply a presumption against preemption in express preemption cases. Op. 24-26. Judge Baker's concurrence highlighted the limits on "concerning" preemption clauses like EPCA's. Op. 41-46.

## ARGUMENT

### I. The Panel Reached the Correct Result by Faithfully Applying Supreme Court and Ninth Circuit Precedent.

The Supreme Court and this Court have held that express preemption is analyzed just like any question of statutory interpretation: by beginning with the text—and ending there if the text is unambiguous. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016); *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542,

552 (9th Cir. 2022). That is because the statute's plain meaning "necessarily contains the best evidence of Congress' pre-emptive intent." *Franklin*, 136 S. Ct. at 1946. Of course, like any statutory text, preemption provisions must be read in context. *See Sturgeon v. Frost*, 577 U.S. 424, 438 (2016); *R.J. Reynolds*, 29 F.4th at 552. The panel did exactly that.

## A. The panel correctly held that the ordinance is preempted.

The panel followed normal statutory construction principles to the conclusion that EPCA preempts Berkeley's ordinance because it relates to the quantity of natural gas consumed by covered appliances. Op. 11-13. The panel began with § 6297(c)'s text, which as relevant here preempts a "regulation concerning" a covered product's "energy use." § 6297(c); Op. 12. The panel then consulted the statute's definitions. Op. 12-13. EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use." § 6291(4). "[E]nergy" includes "fossil fuels," such as natural gas. § 6291(3). Because "point of use" is not defined, the panel considered its ordinary meaning: the "place where something is used." Op. 13 (attribution omitted).

What is more, "concerning" carries a well-established meaning. As the panel recognized, Op. 15-16, "'[c]oncerning' means 'relating to,' and is the equivalent of 'regarding, respecting, about.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) (cleaned up). Those terms "express[] a broad pre-emptive purpose," *Coventry Health Care of*

5

*Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017) (attribution omitted), "ensuring that the scope of a provision covers not only its subject but also matters relating to that subject," *Lamar*, 138 S. Ct. at 1760.

Taking these definitions together, the panel held, correctly, that "EPCA preempts regulations that relate to 'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are used." Op. 13 (alteration in original). By prohibiting gas appliances from using any natural gas, Berkeley's regulation "necessarily impacts" how much energy those appliances consume at their point of use, and so § 6297(c)'s unambiguous text preempts it. *Id.*

The panel did not read the text in a vacuum. Rather, it accounted for § 6297(c)'s context and EPCA's structure, which confirm the panel's reading. The exception for certain "building code requirements" demonstrates that Congress understood preemption to reach building codes, not just "direct or facial regulations of consumer products," Op. 16-17; § 6297(f), as the district court incorrectly concluded and as Berkeley still argues. Likewise, Congress prohibited waivers for regulations that would "significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." § 6297(d)(3). As the panel stated, this signals that EPCA's concern does not stop at the end of the assembly line. Op. 17. Nor did Congress allow waivers likely to result in making a type or class of product unavailable in the state.

6

§ 6297(d)(4). There would be no need to provide an exemption or prohibit a waiver if such regulations were not preempted.

As the panel explained, a wealth of Supreme Court precedent makes clear that "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." Op. 22-23 (collecting cases); *see, e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253-55 (2004) (rejecting an interpretation that "would undo Congress's carefully calibrated regulatory scheme"). Just as EPCA preempts Berkeley from banning covered appliances directly, it preempts Berkeley from "merely moving up one step in the energy chain and banning natural gas piping" needed to use them. Op. 22-23.

### B. Berkeley's and amici's arguments fail to give meaning to EPCA's text and structure and attack a strawman decision the panel did not make.

Berkeley and amici throw dozens of arguments at the wall. None stick.

**1.** Belatedly adopting the Government's view, Berkeley now says § 6297(c) preempts only "conservation standards for covered appliances," Pet. 1-2. The panel correctly rejected that argument. Op. 19-21. Had Congress wanted to preempt only energy conservation standards or their equivalent, "it could have said so." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019). Instead, it preempted regulations concerning energy use.

7

Berkeley's and the Government's argument hinges on giving three different phrases—"energy conservation standard," "other requirement," and "regulation concerning" appliances' "energy use"—the same meaning. That is contrary to the statutory language and structure. In the very sentence at issue, EPCA uses "energy conservation standard" as the trigger for preemption, while using "regulation concerning" "energy use" to describe what is preempted. § 6297(c); *see also* § 6297(d)(1)(A) (allowing waiver for a regulation "which provides for any energy conservation standard or other requirement with respect to energy use"). Courts usually presume that "differences in language like this convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (attribution omitted). That is especially so here, where Congress defined the terms differently. § 6291(4)-(6); Op. 20.

The argument also ignores Congress's deliberate changes to the text. The 1978 provision Congress replaced with § 6297(c)'s "regulation concerning" language used to say almost exactly what the Government and Berkeley insist that § 6297(c) means now: It preempted "any energy efficiency standard or other requirement with respect to energy efficiency or energy use of a covered product." § 6297(a)(2) (1982); *see* U.S.'s Panel Br. 13-14. "When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*, 141 S. Ct. 1648, 1660-61 (2021) (attribution omitted).

Section 6297(c)'s heading "cannot substitute for the operative text." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008). Berkeley's assertion that the panel "overlook[ed] that" Congress enacted the title, Pet. 9 n.2, is incorrect. Enacted titles, like the one in the case the panel cited, "cannot limit the plain meaning of the text." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (attribution omitted); Op. 20.

Finally, context confirms that Congress had in mind more than just energy conservation standards or "product-focused" regulations, U.S.'s Pet. Br. 9. Otherwise, § 6297(f)(3)'s building code exception would be meaningless. Building codes cannot qualify unless they set an overall conservation objective and allow builders to "select[] items whose combined energy efficiencies meet the objective," without requiring any covered product to exceed federal standards. § 6297(f)(3)(A)-(B), (F). So to qualify, the building code *cannot* impose product-specific requirements—the only types of regulations Berkeley says are preempted. Because Congress would not have created a pointless exception, it must have thought that it was preempting more.

This Court recognized as much in *Building Industry Ass'n of Washington v. Washington State Building Code Council*, 683 F.3d 1144 (9th Cir. 2012), where there was "no dispute that Washington's building code" requiring a "15% reduction in new buildings' energy consumption" was a regulation "concerning the energy efficiency or energy use" of covered appliances, despite the lack of any product-specific standards, *id.*

9

at 1147-49.  So rather than endorsing the Government's view, U.S.'s Pet. Br. 8, *Building Industry* refutes it.  Regardless, general observations that EPCA preempts efficiency standards do not mean nothing else is preempted.

**2.**  Berkeley contends that the panel ignored EPCA's structure and purpose.  Pet. 7-14.  That argument depends on Berkeley's mistaken view that the panel gave individuals "a right to use, free of local regulation, any appliance that passes muster under" federal standards.  Pet. 13.  The panel did no such thing.

The point of the panel's discussion of EPCA's concern "with the end-user's ability to *use* installed covered products at their intended final destinations" was to reject Berkeley's argument that EPCA has nothing to say after "the products roll off the factory floor." Op. 13-16.  But it does not follow, and the panel did not suggest (let alone hold), that no regulation can ever limit any individual's use of any covered appliance under any circumstance.  Preemption is still limited to regulations "concerning" a covered product's "energy efficiency, energy use, or water use."  § 6297(c).  Berkeley's ordinance is such a regulation because "ban[ning] the delivery of natural gas to products that operate on natural gas 'concerns' the energy use of those products," Op. 16, not because it happens to affect the circumstances under which an individual may use a covered appliance.

10

As Judge Baker's concurrence explains, EPCA is "unlikely" to preempt regulations that only "incidentally impact" covered products' gas consumption, such as "state and local taxes" or a decision to not extend a utility system. Op. 41-42. Berkeley's ordinance, by contrast, "cuts to the heart of what Congress sought to prevent." Op. 45. Berkeley's ban on gas piping is inextricably linked to covered gas appliances' energy use. It is preempted not because it restricts "*where* or *when* an appliance is used," Pet. 15, but because its effect is to categorically prohibit gas appliances' energy use. That Berkeley invokes health and safety purposes does not make its preempted regulation permissible; "[d]espite the importance of [those] objective[s]," EPCA does not "create[] an exception on that basis." *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373-74 (2008).

To be clear, the panel did not dredge up an "unheralded 35-year-old provision," Pet. 1, and announce that it wiped away longstanding regulations. This Court addressed the same provision in *Building Industry* and a neighboring provision in *Air Conditioning*. What is new is Berkeley's policy. It should be no surprise that Berkeley's attempt to push the boundaries of energy policy ran into the guardrails Congress established. Nothing about the decision endangers local health and safety regulations that have long coexisted with EPCA.

Nor did the panel create a "wild mismatch" between the preemption and waiver provisions, Pet. 11-12. Any "mismatch" is by design. *See*

11

*Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1155 (9th Cir. 2022) ("Congress is free to design [preemption] to be either broader or narrower than the protections that the federal law confers."). Dissatisfied with the Department's waive-it-all approach, Congress chose to limit the Department's waiver authority. § 6297(d)(1)(A). Among other restrictions, Congress prohibited waivers that would "significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis," § 6297(d)(3), or that are "likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics (including reliability), features, sizes, capacities, and volumes" generally available in the market, § 6297(d)(4). Those restrictions reflect Congress's choice to pursue overall reductions in energy consumption without undermining appliance availability and consumer choice. Banning natural gas appliances would run afoul of both restrictions.

Ultimately, it is Berkeley's reading that would upend EPCA's design. By Berkeley's logic, EPCA preempts energy standards more stringent than federal standards but leaves a loophole: States and local governments would get free rein to ban types of appliances by prohibiting them from using any energy, to ban energy sources, or even to pick and choose exactly which products to allow. That would gut the preemption provision and enable the very patchwork Congress sought to avoid. And it would undermine Congress's careful attention to preserving consumer

choice and neutrality among energy sources. § 6297(d)(4); *Bldg. Indus.*, 683 F.3d at 1153 (regulations cannot discriminate among or favor "particular products or methods" (citing § 6297(f)(3)(C))).

**3.** Berkeley's textual arguments fare no better. The "energy use" definition's reference to "test procedures," § 6291(4), does not establish that Congress cared only about regulations on appliances' theoretical energy use and gave free rein to local governments to regulate their energy use in practice, *see* Pet. 13-14; States' Br. 14-15. Putting aside that this would undermine uniformity, EPCA's requirements for test procedures confirm its concern with real-world conditions. Test procedures must measure "a representative average use cycle or period of use." § 6293(b)(3). That representative energy use is calculated in a lab does not mean regulations that operate outside the lab cannot be regulations concerning energy use.

Nor does the word "quantity" clear the way to restrict which types of energy an appliance may use. Prohibiting appliances designed to use a disfavored type of fuel from using that fuel relates to the quantity of energy they consume. Berkeley may be "unconcerned with the quantity of energy" electric appliances use, Pet. 15, but it was so concerned about gas appliances' consumption of gas that it banned them from using gas. Congress repeatedly signaled that it did not want to make types of products unavailable. §§ 6295(o)(4), 6297(d)(4). Before the Government reinterpreted EPCA for this litigation, the Department agreed. 47 Fed.

Reg. 14,424, 14,434 (Apr. 2, 1982) (proposed rule) ("[t]he statute is clear" that "effectively ban[ning] appliances using certain types of fuel" "should not be the consequence of standards").

Finally, Berkeley resists the well-settled meaning of "concerning," arguing that in this statute, Congress used it to mean "of." Pet. 15. That Congress used the same word ("concerning") to exempt from preemption (with varying specificity) as it did to preempt does not establish that it departed from the word's well-understood meaning. *See* § 6297(b)(6)-(7), (c)(4)-(9), (d)(6), (f)(1)-(3). All Berkeley's examples show is that Congress sought to align the scope of its exemptions with the scope of preemption.

**4.** Berkeley contends that the panel ignored statutory construction precedent. Pet. 7-8, 17-19. Not so. As discussed, the panel read § 6297(c) "with a view to [its] place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (attribution omitted). And the provision's "substantive effect" as construed "is compatible with the rest of the law." *Sackett v. EPA*, 143 S. Ct. 1322, 1340 (2023) (attribution omitted). The panel's reading protects Congress's chosen policy, whereas Berkeley's would make § 6297(c) so easy to evade as to be meaningless.

Nor did the panel "disregard federalism implications," Pet. 17-19; *see* Pet. 10-11. Berkeley's view of the "federalism implications" is again clouded by its mistaken view of the decision's breadth. Anyhow, the panel accounted for federalism in exactly the way precedent requires.

14

Preemption is part and parcel of federalism; it "derives from the Supremacy Clause." *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023). Once Congress says it is preempting, "the plain wording of the [preemption] clause" determines what exactly Congress preempted. *Franklin*, 136 S. Ct. at 1946. Thus, the panel applied the ordinary rules of statutory construction to "interpret[] what Congress has said on the subject," "without any presumptive thumb on the scale." *R.J. Reynolds*, 29 F.4th at 552-53 & n.6.

Berkeley's "exceedingly clear" statement rule, Pet. 18 (quoting *Sackett*, 143 S. Ct. at 1341)—advanced for the first time in its petition— is just the presumption against preemption by another name. None of the cases Berkeley relies on are even express preemption cases. *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), stands for the unremarkable proposition that Congress legislates against background principles, *id.* at 539-40. And *Gonzales v. Oregon*, 546 U.S. 243 (2006), is far off the point. It held that a statute that was "silen[t] on the practice of medicine generally" and recognized "state regulation of the medical profession" did not implicitly authorize a single executive officer "to define general standards of medical practice in every locality." *Id.* at 271-75.[2] Here, by contrast, Congress expressly shifted power from states and localities to

---

[2] *See also Sackett*, 143 S. Ct. at 1341 (rejecting a broad interpretation of "waters of the United States" in the Clean Water Act); *Bond v. United States*, 572 U.S. 844, 856-60 (2014) (drawing on "basic principles of federalism" to decline to read an ambiguous criminal statute implementing a chemical weapons treaty to "reach purely local crimes").

the federal government.  This is an "exceedingly clear" statement, were one required.

## II.  This Straightforward Statutory Interpretation Case Does Not Present Any Question Warranting En Banc Review.

That a case's outcome is significant to the parties and policymakers does not mean it involves the kinds of legal issues worthy of en banc consideration.  The panel's case-specific decision—that EPCA preempts Berkeley's ordinance—raises no "question of exceptional importance," Fed. R. App. P. 35(a)(2).  Nor do Berkeley's concerns about implications for other cases raise any question suitable for en banc review here.  And because the lack of a presumption against preemption is not outcome determinative, this case would be a poor vehicle for reconsidering circuit precedent on that point, which Berkeley has not even requested.

**1.** The panel's holding that Berkeley's ordinance is preempted does not present any exceptionally important question.  There is no split within this Circuit, no disagreement among the circuits, and no reason to think the decision will dictate the outcome for all local regulations.  So it is no surprise that, for all its atmospherics about the purported implications, Berkeley never specifies what exceptionally important legal question it wants decided.  *See* Fed. R. App. P. 35(b)(1)(B) (requiring a "concisely stated" question).  Berkeley's policy concerns are better directed to Congress, and its concerns about the outer bounds of § 6297(c) are best left for future cases presenting them.

Berkeley and amici present a parade of horribles they say will follow from the panel's decision. The decision allegedly threatens everything from fire codes, Pet. 20; to prohibitions on installing furnaces in too-small spaces, U.S.'s Pet. Br. 18; and even to zoning, Nat'l League of Cities' Br. 9-10. But these threatened consequences are not tied to the statute's terms, resting instead on the incorrect premise that the panel announced "rights to use appliances free of *all* local regulation," Pet. 16. To take just one example, a regulation requiring furnaces to be placed in an appropriately sized space regulates where and how furnaces are used. That some individuals may not be able to use a larger furnace (available to others with appropriate space) but can still use a smaller furnace does not automatically transform the regulation into one concerning furnaces' energy use, rather than one having an incidental effect.

In reality, the panel did not decide what, if anything, EPCA has to say about the wide range of regulations that have long coexisted with EPCA. *E.g.*, ER-99-101 ¶¶ 86-90 (listing a variety of existing regulations that could tangentially affect appliances, such as regulations on pipe size, pipe pressure, and piping location). The panel emphasized that it was deciding only the case before it, and not, for example, questions about control over gas distribution systems. Op. 22. Judge Baker further highlighted these limits. Op. 41-42.

To be sure, some lines may be hard to draw. But that is a feature of "concerning" and "relating to" preemption provisions, and those are

questions for future cases. Congress has repeatedly chosen these formulations when it desires broad preemption. *Lamar*, 138 S. Ct. at 1760; *Coventry*, 137 S. Ct. at 1197. And as courts' experience with similar statutes like ERISA and the Airline Deregulation Act demonstrates, these provisions are ill-suited to bright-line rules. *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-85 (1992); *see also Rowe*, 552 U.S. at 370-71. No one case—and certainly not one that "does not present a borderline question"—is suitable for mapping the outer boundaries of EPCA preemption. *Morales*, 504 U.S. at 391.

**2.** Circuit precedent correctly acknowledges Supreme Court precedent rejecting "any presumption against pre-emption" when a statute "contains an express pre-emption clause." *Franklin*, 136 S. Ct. at 1946; *R.J. Reynolds*, 29 F.4th at 552 & n.6; Op. 31 (O'Scannlain, J., concurring). There is no need to reconsider. Regardless, this case is not a suitable vehicle: The panel majority did not agree that the presumption would have made a difference. And for the reasons discussed, it would not have. Moreover, this Court should not depart from "the principle of party presentation" to take up an issue Berkeley has not raised. *United States v. Sineneng–Smith*, 140 S. Ct. 1575, 1579 (2020); Answering Br. 11 ("no need to address whether any presumption applies"); Pet. 4-5, 17-19 (no challenge to precedent).

## CONCLUSION

The petition should be denied.

18

Dated: August 10, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*
Courtland L. Reichman
Laura Carwile
Brian C. Baran
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401
creichman@reichmanjorgensen.com

Gary J. Toman
WEINBERG WHEELER
HUDGINS GUNN & DIAL
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA 30326
(404) 876-2700
gtoman@wwhgd.com

Kylie Chiseul Kim
MASSEY & GAIL LLP
Suite #450
Washington, DC 20024
(202) 407-1268
kkim@masseygail.com

Sarah O. Jorgensen
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
(404) 609-1040
sjorgensen@reichmanjorgensen.com

*Attorneys for Plaintiff-Appellant*
*California Restaurant Association*

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 21-16278

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 4,199 .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Courtland L. Reichman | **Date** | Aug 10, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11** *Rev. 12/01/2021*