No. 21-16278

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CALIFORNIA RESTAURANT ASSOCIATION, a California nonprofit
mutual benefit corporation,

*Plaintiff-Appellant*,

v.

CITY OF BERKELEY,

*Defendant-Appellee*.

On Appeal from the United States District Court
California Northern District, Oakland
No. 4:19-cv-07668-YGR, Hon. Yvonne Gonzales Rogers, District Judge

**BRIEF OF THE RESTAURANT LAW CENTER
AS AMICUS CURIAE IN OPPOSITION TO
PETITION FOR REHEARING EN BANC**

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, 7th Floor
Washington, DC 20036
(202) 492-5037
aamador@restaurant.org

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Amicus Curiae certify that it has no outstanding shares or debt securities in the hands of the public, and it does not have a parent company. No publicly held company owns 10% or more of amicus' stock.


/s/ Angelo I. Amador

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF INTEREST .................................................................. 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................... 5

I.  Rehearing Is Not Warranted Because The Panel Decision Is Correct ............................................................................................. 5

    A.  The Panel Correctly Held That EPCA Preempts Berkeley's Ordinance .............................................................. 5

    B.  The Panel Correctly Held That A Presumption Against Preemption Is Inapplicable Because EPCA Contains An Express Preemption Provision ................................................ 9

II.  This Case Does Not Present A Question Of "Exceptional Importance." ...................................................................................... 11

    A.  Concern About Potential Implications Of The Panel's Decision Are Overblown .......................................................... 11

    B.  The Panel Decision Avoids Causing Harm To The Restaurant Industry ................................................................. 14

CONCLUSION ....................................................................................... 17

CERTIFICATE OF COMPLIANCE ...................................................... 18

CERTIFICATE OF SERVICE ................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Conditioning and Refrigeration Inst. v. Energy Res.*
  *Conservation and Dev. Comm'n,*
  410 F.3d 492 (9th Cir. 2005) .......................................................... 8, 9

*BedRoc Ltd., LLC v. United States,*
  541 U.S. 176 (2004) ........................................................................ 8

*Digit. Realty Tr., Inc. v. Somers,*
  138 S. Ct. 767 (2018) ...................................................................... 8

*Hollins v. Walmart Inc.,*
  67 F.4th 1011 (9th Cir. 2023) ...................................................... 10

*Lamar, Archer & Cofrin, LLP v. Appling,*
  138 S. Ct. 1752 (2018) .................................................................... 6

*Nat'l R.R. Passenger Corp. v. Su,*
  41 F.4th 1147 (9th Cir. 2022) ...................................................... 10

*Puerto Rico v. Franklin California Tax-Free Tr.,*
  579 U.S. 115 (2016) ................................................................. 10, 13

*R.J. Reynolds Tobacco Co. v. Cnty. of L.A.,*
  29 F.4th 542 (9th Cir. 2022) .......................................................... 9

*Roberts v. Sea-Land Servs., Inc.,*
  566 U.S. 93 (2012) ........................................................................... 7

*United States v. Sineneng–Smith,*
  140 S. Ct. 1575 (2020) .................................................................. 11

*Wis. Cent. Ltd. v. United States,*
  138 S. Ct. 2067 (2018) .................................................................... 8

## Statutes and Rules

42 U.S.C. § 6201(4)-(5) ............................................................. 8

42 U.S.C. § 6291(4) ................................................................. 5

42 U.S.C. § 6297(c) ................................................................. 5

42 U.S.C. § 6297(d)(3) ............................................................ 7

42 U.S.C. § 6297(f) ................................................................. 7

42 U.S.C. § 6291 et seq. .......................................................... 2

Fed. R. App. P. 29 .................................................................. 1

Fed. R. App. P. 35(a) .............................................................. 2

Fed. R. App. P. 35(a)(2) ........................................................ 11

Ninth Circuit R. 29-2(a) ........................................................ 1

S. Rep. No. 100-6 (1987) ........................................................ 9

## Other Authorities

Americas Soc'y et al., *Bringing Vitality to Main Street: How
    Immigrant Small Businesses Help Local Economies Grow*
    (Jan. 2015) ......................................................................... 16

Eric Amel et al., *Independent Restaurants Are a Nexus of
    Small Businesses in the United States and Drive Billions
    of Dollars of Economic Activity That Is at Risk of Being
    Lost Due to the COVID-19 Pandemic* (June 10, 2020) ...................... 15

Nat'l Restaurant Ass'n, California Restaurant Industry at a
    Glance (last accessed Aug. 21, 2023) ............................... 14, 15

Nat'l Restaurant Ass'n, 2023 State of the Restaurant (Feb.
    2023) .................................................................................. 16

Nat'l Restaurant Ass'n, 2023 State of the Restaurant
    Industry Executive Summary (Feb. 2023) ........................ 16

Nat'l Restaurant Ass'n, National Statistics (last accessed
 Aug. 21, 2023) ........................................................................ 15

## STATEMENT OF INTEREST[1]

The Restaurant Law Center ("RLC") is the only independent public policy organization created specifically to represent the interests of the food-service industry in the courts. The industry is comprised of over one million restaurants and other foodservice outlets employing over 15 million people—approximately ten percent of the U.S. workforce, making it the second-largest private-sector employer in the United States. Through regular participation in amicus briefs on behalf of the industry, the Restaurant Law Center provides courts with the industry's perspective on legal issues significantly impacting its members and highlights the potential impact of pending cases like this one.

The Restaurant Law Center and its members have a significant interest in this Court denying the petition for rehearing en banc filed by Defendant the City of Berkeley ("Berkeley"). The restaurant industry has long served as responsible stewards of the environment and worked to

_____

[1] Pursuant to Ninth Circuit Rule 29-2(a), amicus states that all parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no money intended to fund preparing or submitting this brief was contributed by a party or party's counsel or anyone other than amicus, its members, or its counsel. Fed. R. App. P. 29.

collaborate with governments, businesses, partners, customers, and other stakeholders to promote and adopt measures designed to address climate change.

In 2019, Berkeley adopted such a measure—an ordinance ("Ordinance") "prohibiting installation of natural gas infrastructure, such as piping, in newly constructed buildings." Dkt. 92, Petition for Rehearing En Banc ("Pet.") at 3 (May 31, 2023). The panel concluded that the Ordinance violated the express preemption provision of the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. § 6291 et seq., and frustrates the national uniformity that Congress sought to achieve through EPCA. This Court should leave that correct panel opinion in place and deny Berkeley's petition for rehearing en banc.

## SUMMARY OF ARGUMENT

Plaintiff the California Restaurant Association ably explains in its brief why this Court should deny the petition for rehearing en banc. The Restaurant Law Center writes separately to emphasize why it believes the panel's decision is correct as a matter of law, is not worthy of rehearing, and should be left undisturbed. *See* Fed. R. App. P. 35(a).

**I.** The panel correctly interpreted EPCA's express preemption provision to hold that the Ordinance operates as a local regulation that impermissibly concerns the "energy use" and "energy efficiency" of covered products by limiting "the quantity of [natural gas] directly consumed by certain consumer appliances at the place where those products are used." *See* Dkt. 87-1, Slip Op. 13 (Apr. 17, 2023). The panel also noted, correctly, that "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*," *i.e.* "banning natural gas piping within buildings rather than banning natural gas products themselves." *Id.* at 23-24.

Following well-established methods of statutory interpretation, the panel also properly concluded that the EPCA's structure and context reinforce that the Ordinance is preempted. In particular, the panel rightly recognized its conclusion was further supported by EPCA's provisions relating to building codes and waivers, and Congress's desire to avoid a patchwork of local regulation regarding "energy efficiency" and "energy use." *Id.* at 15-17.

In addition, the panel properly followed binding precedent from this Court and the Supreme Court and declined to adopt a presumption

against preemption when applying EPCA's express preemption provision.

**II.** This is not a case that raises an issue of "exceptional importance" that warrants en banc review. Much as Berkeley and its amici supporters suggest otherwise, this case involves a narrow issue about the legality of a single ordinance passed by the 53rd largest city in California. This case does not involve an assault on the power of state and local authorities to adopt regulations relating to the environment, health, safety, zoning, or anything else so long as those measures do not violate federal law. Nor does the panel's decision necessarily prevent Berkeley from attempting different approaches to advance its policy goals, prevent courts in future cases from determining how the panel's decision applies (if at all), or prevent Congress from changing any provision of EPCA.

While leaving the panel's decision in place will not cause harm, vacating the decision risks real and substantial negative consequences for the restaurant industry. The restaurant industry is marked by fierce competition, thin margins, rising costs, and myriad other regulatory and operational challenges. Every level of government should be helping

restaurants thrive, for the benefit of their workers and communities alike. But Berkeley's Ordinance does the opposite—by creating regulatory and operational uncertainty. The panel was right to hold the Ordinance was preempted and that decision should stand.

## ARGUMENT

### I. Rehearing Is Not Warranted Because The Panel Decision Is Correct.

#### A. The Panel Correctly Held That EPCA Preempts Berkeley's Ordinance.

After reviewing EPCA's text, structure, and context, the panel concluded that EPCA preempted the Ordinance. That decision was correct. It therefore should not be reconsidered en banc.

Relevant here, EPCA's preemption provision states that "for any covered product, no State regulation concerning the energy efficiency, [or] energy use … of such covered product shall be effective with respect to such product." 42 U.S.C. § 6297(c). "[E]nergy use," the panel explained, is defined in the statute as "the quantity of energy directly consumed by a consumer product at point of use." Slip Op. 12 (citing 42 U.S.C. § 6291(4)). The statute defines "energy" to include "fossil fuels" like natural gas. *Id.* Although "point of use" is not defined in the statute, it ordinarily means at "the place where something is used." *Id.* at 13 (citation omitted).

5

And the term "concerning," though also undefined in the statute, has long been broadly construed to mean "not only [the] subject" of a provision "but also matters relating to that subject." Slip Op. 16 (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759-60 (2018)).

Considering the words of the statute together, the panel correctly recognized that the Ordinance's prohibition on the installation of natural gas infrastructure in newly constructed buildings regulated the "energy use" of covered products under EPCA. As the panel explained, "a regulation on 'energy use' fairly encompasses an ordinance that effectively eliminates the 'use' of an energy source." Slip Op. 15. Moreover, energy use is to be measured "not from where the products roll off the factory floor, but from where consumers *use* the products." *Id.*

As a result, the Ordinance effectively operates as a local regulation that necessarily concerns the "energy use" and "energy efficiency" of covered products in a building by essentially banning those covered products, even if the Ordinance purports to regulate only the natural gas pipes leading up to new buildings. *See* Slip Op. 13 ("EPCA preempts regulations that relate to 'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are

used."). In sum, as the panel pointed out: "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." Slip Op. 23. As applied here, that means "Berkeley can't bypass preemption by banning natural gas piping within buildings rather than banning natural gas products themselves." *Id.* at 24.

The panel's reading of the preemption provision also makes sense in context. *See Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). As the panel noted, EPCA's provisions relating to building code requirements show that Congress did not intend EPCA to only preempt "direct or facial regulations of consumer products." Slip Op. 16-17 (discussing 42 U.S.C. § 6297(f)). Congress's constraints on waivers similarly show that Congress did not intend to limit EPCA's preemptive power to the operation of covered products as they leave the factory. *See id.* at 17 (citing 42 U.S.C. § 6297(d)(3)).

If Congress had instead wanted to make clear that EPCA's preemption provision applied only to direct regulations of covered

products as manufactured, Congress would have said so. That silence speaks volumes. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("the preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there"); *accord Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018) (reminding that where statute "includes an explicit definition," this Court "must follow that definition").

Finally, the panel's interpretation of EPCA as preempting the Ordinance is true to Congress's aim to avoid a patchwork of conflicting requirements relating to energy efficiency and energy use. *See Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) (advising that statutory terms "should be 'interpreted as taking their ordinary ... meaning ... at the time Congress enacted the statute'" (citation omitted)).

EPCA was originally passed following the oil embargo of the 1970s, as a way "to conserve energy supplies through energy conservation programs, and, where necessary, the regulation of certain energy uses." 42 U.S.C. § 6201(4)-(5); *see Air Conditioning and Refrigeration Inst. v. Energy Res. Conservation and Dev. Comm'n*, 410 F.3d 492, 498-99 (9th Cir. 2005). In 1987, Congress amended EPCA to address the "problem of

a growing patchwork of differing State regulations" that would "result in the unavailability in the State of a product type or of products of a particular performance class." S. Rep. No. 100-6, at 2, 4 (1987). The Ordinance is precisely such a regulation: by prohibiting natural gas piping, the Ordinance is designed to make the types of covered products that use natural gas unavailable to consumers. That history and context therefore provides further evidence to support the panel's conclusion that EPCA preempts the Ordinance.

## B. The Panel Correctly Held That A Presumption Against Preemption Is Inapplicable Because EPCA Contains An Express Preemption Provision.

In concluding that EPCA preempted the Ordinance, the panel undertook its textual analysis "'without any presumptive thumb on the scale' for or against preemption." Slip Op. 11-12 (quoting *R.J. Reynolds Tobacco Co. v. Cnty. of L.A.*, 29 F.4th 542, 553 n.6 (9th Cir. 2022)). That was the proper approach.

To be sure, this Court and others have historically applied a "presumption against preemption" and construed statutory "preemption … provisions" "narrow[ly]." *See, e.g.*, *Air Conditioning*, 410 F.3d at 496. But the Supreme Court has moved away from that approach. It explicitly

declined to "invoke any presumption against preemption" when a "statute contains an express pre-emption clause," and instead opted to "focus on the plain wording of the clause," which is "where the inquiry should end, for the statute's language is plain." *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (internal quotation marks and citations omitted).

Since *Franklin*, this Court has repeatedly declined to apply the presumption against preemption to express preemption provisions. *See Hollins v. Walmart Inc.*, 67 F.4th 1011, 1016 (9th Cir. 2023); *Nat'l R.R. Passenger Corp. v. Su,* 41 F.4th 1147, 1153 n.1 (9th Cir. 2022). The panel was bound by those precedents and applied them to hold that "the presumption does not apply here." Slip Op. 33-34 (O'Scannlain, J., concurring). No decision from the Supreme Court since *Franklin* has called those precedents or the panel's decision into question. Whether "[g]reater clarity and further guidance" from the Supreme Court is warranted (*id.* at 36) is for the Supreme Court to decide for itself if asked,

not for this Court to decide en banc. Accordingly, the panel correctly declined to apply a presumption against preemption.[2]

## II.  This Case Does Not Present A Question Of "Exceptional Importance."

Rehearing en banc may be appropriate when a panel decision "involves a question of exceptional importance." Fed. R. App. P. 35(a)(2). This is not such a case.

### A.  Concern About Potential Implications Of The Panel's Decision Are Overblown.

Berkeley and its amici supporters labor to construe the panel's decision as an all-out attack on a wide variety of state and local regulations relating to the environment, health, safety, zoning, and more. *See, e.g.*, Pet. 19-20; Dkt. 112, Brief of Amici Curiae State of California et al. in Support of Petition for Rehearing En Banc at 1-3 (June 12, 2023); Dkt. 111, Brief of Amici Curiae Energy and Environmental Law

---

[2] Amicus also agrees with Plaintiff that this case is "a poor vehicle for reconsidering circuit precedent" holding that a presumption against preemption does not apply in express preemption cases. *See* Dkt. 122, Opp'n to Pet. for Rehearing En Banc at 18 (Aug. 10, 2023) (noting Berkeley has not asked for rehearing on this issue); *see also United States v. Sineneng–Smith*, 140 S. Ct. 1575, 1578 (2020) (vacating and remanding Ninth Circuit judgment that "departed … drastically from the principle of party presentation").

Professors in Support of Petition for Rehearing En Banc at 5 (June 12, 2023); Dkt. 106, Brief of Amici Curiae National League of Cities et al. in Support of Petition for Rehearing En Banc at 2, 7-10 (June 12, 2023); Dkt. 105, Brief of Amici Curiae Physicians for Social Responsibility et al. in Support of Petition for Rehearing En Banc at 3 (June 12, 2023). Their breathless sky-is-falling rhetoric aside, the panel's decision pertains to one effort by one city—which is not even one of the 50 largest cities in California—to adopt an ordinance that takes one approach to hasten a reduction in the use of natural gas. That is it.

Far from categorically barring state and local governments from pursuing their regulatory desires, a fair reading of the panel's decision is merely that such efforts must comply with federal law. Indeed, the panel expressly emphasized that it was deciding "only" whether EPCA preempts the Ordinance—nothing more, nothing less. Slip Op. 22 (panel opinion), *id.* at 41-42 (Baker, J., concurring). The panel's decision thus did not determine that the right to use appliances is free from *all* state and local regulation, that EPCA overrules long-standing regulations, or that EPCA preempts other approaches that states and cities have taken

to reduce greenhouse gas emissions by mitigating the use of natural gas.[3] The panel's decision is simply not the boogeyman some wish to make it out to be.

Nor is en banc rehearing necessary to address any potential implications that might arguably result from overreading the panel's opinion. If Berkeley and its supporters believe the panel's decision has any impact on other efforts or ordinances, they may be addressed in a future case that accounts for the specific legal issues, relevant facts, and pertinent circumstances at issue then. And if Berkeley and its supporters believe EPCA's express preemption provision sweeps too broadly, they should appeal to Congress to change the statute—not to this Court to rehear the case en banc. *See Franklin Cal. Tax-Free Tr.*, 579 U.S. at 130 ("[O]ur constitutional structure does not permit [a] [c]ourt to 'rewrite the statute that Congress has enacted.'" (citation omitted)).

---

[3] Although RLC and its members have promoted and adopted measures designed to address climate change, at this time RLC does not take a position on the wisdom, validity, or viability of any of the measures or ordinances not at issue in this case.

**B.    The Panel Decision Avoids Causing Harm To The Restaurant Industry.**

Rehearing should also be denied because undermining the panel's decision risks causing harm to the restaurant industry.

The restaurant and foodservice industry is the lifeblood of the California economy. In 2022, the industry accounted for an estimated $135.8 billion in sales across over 83,000 locations in California.[4] The restaurant industry is also one of the state's largest private sector employers, employing more than 1,800,000 people, which amounted to 10% of California's total employment in 2022.[5] By 2030, that number is expected to grow by 12.5%, meaning an additional 225,000 additional jobs.[6]

Consumer spending at restaurants has a multiplier effect too. Every dollar spent at table-service restaurants returns $2.03 to the state's economy, not to mention the positive impact on the state's tax

---

[4] Nat'l Restaurant Ass'n, *California Restaurant Industry at a Glance* (last accessed Aug. 21, 2023), https://restaurant.org/getmedia/70eefc90-3065-4078-b2d6-54add44919fa/California.pdf. Establishment figures represent 2022:Q3 data. Sales figures represent total revenues at all eating and drinking establishments.

[5] *Id.*

[6] *Id.*

revenue.[7] A single restaurant contributes to the livelihood of dozens of employees, suppliers, purveyors, and related businesses.[8]

Restaurants are a critical source of tourism in California and comprise an essential part of the fabric of this state. They are also cultural centers, creating unique neighborhood identities and driving commercial revitalization.[9] That is particularly true of the many small restaurants, often family-owned, that make up the vast majority of the industry.

The restaurant industry remains a shining example of upward mobility. Eight in ten restaurant owners say their first job in the industry was an entry-level position.[10] Nine in ten restaurant managers say the same.[11] "Restaurants employ more minority managers than any other industry," and "41% of restaurant firms are owned by minorities—

---

[7] Nat'l Restaurant Ass'n, *supra* note 4.

[8] Eric Amel et al., *Independent Restaurants Are a Nexus of Small Businesses in the United States and Drive Billions of Dollars of Economic Activity That Is at Risk of Being Lost Due to the COVID-19 Pandemic* 8 fig. 2 (June 10, 2020).

[9] *Id*. at 13.

[10] Nat'l Restaurant Ass'n, National Statistics (last accessed Aug. 21, 2023), https://restaurant.org/research-and-media/research/industry-statistics/national-statistics/.

[11] *Id*.

compared to 30% of businesses in the overall private sector."[12] Restaurants also provide immigrants with opportunities to work and own their own businesses.[13]

The restaurant industry has weathered significant challenges in recent years due to the COVID-19 pandemic. Looking ahead, challenges remain: 92% of restaurant operators cite higher food costs as a "significant issue,"; 47% expect competition "to be more intense"; and 62% report being "understaffed."[14] What the restaurant industry needs now is regulatory certainty and consistency—not unnecessary cost, complication, and confusion arising from a patchwork of laws relating to the use of natural gas.

---

[12] *Id.*

[13] Americas Soc'y et al., *Bringing Vitality to Main Street: How Immigrant Small Businesses Help Local Economies Grow* (Jan. 2015), https://www.as-coa.org/articles/bringing-vitality-main-street-how-immigrant-small-businesses-help-local-economies-grow.

[14] Nat'l Restaurant Ass'n, 2023 State of the Restaurant Industry (Feb. 2023), https://restaurant.org/research-and-media/research/research-reports/state-of-the-industry/; Nat'l Restaurant Ass'n, 2023 State of the Restaurant Industry Executive Summary (Feb. 2023), https://restaurant.org/nra/media/research/reports/2023/2023-soi-executive-summary.pdf.

## CONCLUSION

The City of Berkeley's petition for rehearing en banc should be denied and the panel's decision left undisturbed.

August 21, 2023                           Respectfully submitted,

                                          */s/ Angelo I. Amador*

                                          Angelo I. Amador
                                          RESTAURANT LAW CENTER
                                          2055 L Street, NW, 7th Floor
                                          Washington, DC 20036
                                          (202) 492-5037
                                          aamador@restaurant.org

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of

Circuit Rule 29-2(c)(2) because this brief contains 3,075 words.


/s/ Angelo I. Amador

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2023, a true and correct copy of the foregoing brief was served on all counsel of record in this appeal via CM/ECF.

/s/ Angelo I. Amador